**In re RECOMMENDATION OF NORFOLK LOCAL ADVISORY BOARD IN HAMPTON ROADS DEFENSE-RENTAL AREA FOR DECONTROL OF OCEAN VIEW.**

No. 495.

United States Emergency Court of Appeals.

Feb. 12, 1949.

Heard at Norfolk Feb. 7, 1949.

Decided Feb. 12, 1949.

Charles P. Liff, Chief, Appeals Section, of Washington, D. C., (Ed Dupree, Gen. Counsel, Office of Housing Expediter, of Washington, D. C., on the brief) for Housing Expediter.

Walter Aubrey Page, of Norfolk, Va., for Norfolk Local Advisory Board.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

LINDLEY, Judge.

On December 1, 1948, the Norfolk Local Advisory Board, having complied with the procedural requirements of Sec. 204(e) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881 et seq., and having conducted a public hearing in which all interested parties were invited to participate, by the unanimous vote of six members then present, out of the entire membership of nine, recommended that a part of Ocean View, the greater portion of which lies within the City of Norfolk and all of which is embraced within the Hampton Roads Defense-Rental Area, be removed from rent control. This recommendation, with a transcript of all evidence and other material submitted and its findings of fact, the Board filed with the Housing Expediter, who having disapproved the recommendation, within the time limited by the Congress, lodged in this court the complete record of the Board's transactions and such other information bearing upon the issue involved as he deemed pertinent and material. Thus we have presented for determination the question of whether the Board's recommendation shall be approved or disapproved.

Norfolk is a city of some 235,000 people. The specific area with which we are concerned lies toward its northeast boundary and consists of a narrow strip fronting on Chesapeake Bay. It is a part of the community, included for the most part within the city of Norfolk, known as Ocean View, facing the bay, seven and one-half or eight miles long, paralleling the shore and about one-half mile wide, excepting from its interior, however, a subdivision known as Pinewell, an entirely residential district. Ocean View is a developed continuation of Norfolk, with no barriers, landmarks, marks, or signs indicating that it is other than an integral part of the city.

The Board made no recommendation of decontrol in any other part of the Defense-Rental Area. Indeed it limited its consideration entirely to the question of whether this part of Ocean View should continue under control. It recommended that the section should be decontrolled for the reason, as it found, that rental hous-

ing needs therein have been reasonably met; that rental decreases have occurred in the area; that there is no probability of rising rentals; that there is an 8% vacancy rate in habitable nonseasonal units; that some 275 new dwellings have been constructed in this section since 1940, 110 of these since V-J day; and that an F.H.A. project for 438 units is under construction, adjoining the area.

The Expediter contends that the recommendation is not appropriately substantiated by the evidence, as required by the act; that the facts do not justify consideration of this specified part of Ocean View as a housing area separate and apart from the remaining portions of the Defense-Rental Area; that only 100 units therein are registered as having seasonal rents, while over 2,000 non-seasonal units are registered; that the actual vacancies of habitable units are much less than 8%, as found by the Board, and that the evidence does not adequately establish that the demand for rental housing has been reasonably met.

 Under the act, it is our function to determine whether (1) the recommendation is in accordance with law and, (2) the evidence is "of sufficient weight to justify the recommendation."

We are strongly impressed by the force of the Expediter's suggestion that propriety of consideration of decontrol in the specified area apart from decontrol of the entire Defense Area is entirely lacking. He recognizes the right of the Board, under the statute, to consider decontrol of a part of a Defense-Rental Area, but contends that the facts here are not such as to justify separate consideration of the integral part of the area with which we are concerned. The area constitutes a narrow strip of land, but it does not include all of the community of Ocean View; and, even from this strip, Pinewell, a residence district, is excepted.

Norfolk is the chief seat of activities in the entire defense area; from it emanate the forces making desirable or necessary control of rental housing. We can infer only that demands for rental housing in the city as a whole have not

been met; no evidence that such is not the fact is presented. Yet 2,000 rental housing units are located within the small area with which we are concerned and which it is said ought to be decontrolled. People employed in the city live in this section, within 15 or 20 minutes from downtown on busses. The United States Naval Operating Base, the most extensive in this country and the largest industry in the Defense-Rental Area, adjoins the section with which we are concerned, and many of its civilian employees as well as members of the armed forces make their homes there. The U.S. Army Supply Base is not far distant.

Norfolk and its sub-district, Ocean View, are inseparably integrated in a civic and economic sense and especially in the sense of furnishing a supply of rental housing. It seems entirely clear that a demand for housing accommodations by residents of other parts of Norfolk would find some relief at least in Ocean View. The city and its smaller integral parts constitute a unit, interdependently bound by economic and social relationships and tied together by a public transportation service. All housing units in the entire city make up the total rental market. These and other facts make it certain that this is not a remote, inaccessible, segregated or isolated hamlet or resort, but rather an integral part of the city, closely knitted thereto, and supplying a part of needed rental housing for the entire Defense-Rental Area.

 We conclude that the Board's recommendation to decontrol this somewhat patchwork area is not tenable under the provisions of the statute. The Hampton Roads Defense-Rental Area was created pursuant to congressional authority and rent control established therein, in order to counteract inflationary forces in rents, in a territory most actively engaged in important defense work. Many governmental functionaries had and still have their seat there. Thousands of employees of the national naval and military forces necessarily established residence there. The population grew rapidly, and is still greatly in excess of that in the pre-war

period. As a result, employees have found it necessary to secure living quarters in any and all portions of the area which supply rental housing. Inasmuch as there is no claim that these needs have been met generally, and as many residents in this area follow occupations elsewhere within the Defense Area, it seems obvious that a determination of the housing needs of the entire city of Norfolk must enter into a determination of whether an integral part thereof should be decontrolled. The demand is area-wide; each integral part of the area contributing to the supply of housing to help meet the city-wide demand, becomes a part of the total existing source of supply of housing. Were any integral part of a city in a defense area decontrolled without reference to the needs of the whole, efficiency of the governmental effort to preserve rent ceilings would be seriously hampered and, if such instances were multiplied, completely stalemated. Such a result, we feel sure, was not within the contemplation of the Congress in enacting the existing law.

The Board seems to have attempted to justify its consideration of this specified area separately and apart from the greater area of which it is a part, on the ground that Ocean View, rather than being a part of residential Norfolk, is in fact essentially a summer resort. Thus the area proposed to be decontrolled is repeatedly referred to in the record as "the resort area of Ocean View." Counsel for interested parties asserted, at the hearing before the Board, that rentals for seasonal units had been frozen at abnormally low off-season rates. But the evidence is that in this area more than 2,000 ordinary non-seasonal rental units are registered for rent, but only 100 units calling for seasonal rents. Of course, the 2,000 registered rental units are part and parcel of the total units in the entire area which make up the available supply of rental housing.

Owners of resort property, which they rent at seasonal rates in the summer, have a complete remedy for any freezing at unfair or unjust ceilings, in the regulations covering seasonal properties.[1] Thus, purely seasonable resort property is exempt, and its owner, therefore, has no interest in decontrol. Residential units which partake of both seasonal and non-seasonal characteristics likewise are provided with a remedy for establishment of seasonal rentals separate and apart from non-seasonal ceilings. In other words, owners of resort units such as exist in Ocean View do not need decontrol of residential housing in order to obtain relief. To ask for decontrol of residential rental units, in order to correct alleged abnormal seasonal ceilings is, under the facts of this case to pursue a mistaken and futile remedy. Thus it was wholly immaterial in the Board's consideration that many units in the territory are resort residential units.

For the reasons mentioned the recommendation must be disapproved. An order to that effect will be entered.

---

[1] 2 F.R. 5700, Sec. 825.1 (b) (vi).